UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| PAUL BLACK, | § | |
| | § | |
| Appellant, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-322 |
| | § | |
| MICHAEL B. SCHMIDT, *et al*, | § | |
| | § | |
| Appellees. | § | |

## OPINION AND ORDER

Appellant, Paul Black (Black), filed this appeal against Michael B. Schmidt, Chapter 7 Trustee (Trustee) and Toby Shor, Seashore Management Trust, and 2004 GRAT (collectively Shor) complaining of the United States Bankruptcy Court's "Memorandum Opinion and Order on Motion to Set Aside Shor Settlement Agreement (Shor Sale)" (D.E. 3-62).  Black's previous challenge to the Shor Sale was the subject of direct appeal in *Black v. Shor*, No. 11-cv-258 (S.D. Tex. January 27, 2014), in which this Court affirmed the Bankruptcy Court's approval of the Shor Sale over Black's objection that Shor's purchase of certain assets of the bankruptcy estates was not in good faith.

In this appeal, Black complains that the Bankruptcy Court should have permitted discovery on, and granted, Black's motion to set aside the Shor Sale under Fed. R. Civ. P. 60 as representing a fraud on the court.  In sum, Black contends that Shor and her attorneys knew—when they sought approval of the Shor Sale—that they would engage in unlawful acts, including a conspiracy to obtain unlawful orders from a county court judge, in order to collect Shor's judgment and other claims against Black and his business

entities.   The Bankruptcy Court denied the motion to set aside without permitting discovery.  For the reasons set out below, this Court AFFIRMS.

## BACKGROUND

This appeal involves a review of the events leading up to the Bankruptcy Court's approval of the Shor Sale, as well as events that followed:

| | |
|---|---|
| April 3, 2009 | In the U.S. Bankruptcy Court, S.D. Tex., creditors filed an involuntary petition for bankruptcy relief against BNP Petroleum Corp., one of Black's business interests (this opinion sometimes refers to Black and his business interests (Black Entities) collectively as Black).   This was eventually converted to a Chapter 11 and back to Chapter 7, with Michael B. Schmidt appointed as Chapter 7 Trustee. |
| Sept. 22, 2009 | BNP Oil & Gas Properties, Ltd., another of the Black Entities, filed a voluntary petition for bankruptcy relief.  This case, along with BNP Petroleum Corp. was eventually converted to Chapter 7, with Schmidt as Chapter 7 Trustee. |
| June 1, 2010 | The Trustee, first as Litigation Trustee and continuing as Chapter 7 Trustee, filed an adversary proceeding against both Black and Shor (Civil Action No. 10-2022 in the U.S. Bankruptcy Court, S.D. Tex.), alleging fraudulent transfers and conversion, among other things, and seeking to recover property of the BNP Estates. |
| April 6, 2011 | After obtaining an order lifting stay, Shor obtained an arbitration award against Black for approximately $30 million, which was reduced to judgment against Black in county court.  D.E. 3-69, Ex. 6. |
| May 6, 2011 | Seeking to collect on her judgment, Shor filed an application for turnover in county court seeking turnover of Black's interests in the Black Entities. |

| | |
|---|---|
| June 8, 2011 | Just prior to the hearing on Shor's request for a turnover order, Black and the Trustee entered into a settlement agreement (Black Settlement) whereby Black agreed to pay the Trustee's claims (which were liquidated by the agreement) over time, with Black's interests in his non-exempt businesses (Black Entities) as collateral for his payment plan.  Black executed a conveyance of the Black Entities to the Trustee, expecting that they would be conveyed back upon completion of the payment plan.   This agreement was subject to Bankruptcy Court approval and, along with that disclaimer, it was disclosed in open court in the county court proceedings.  This prevented Shor from obtaining Black's interests in the Black Entities through her May turnover action. |
| June 24, 2011 | Shor and the Trustee entered into a sale agreement (Shor Sale) by which Shor would purchase the Trustee's Adversary Proceeding claims against Black and the Black Entities and settle the Trustee's claims against herself.  Shor agreed to pay the Trustee $216,000 immediately and additional monies as a percentage of collections against Black.   This agreement was subject to Bankruptcy Court approval and was inconsistent with the Black Settlement. |
| June 27, 2011 | The Trustee and Shor filed a joint motion to approve the Shor Sale.  D.E. 3-66. |
| July 6-7, 2011 | Black's children are the beneficiaries of a trust for which Hector Canales is the Trustee, and the trust shared ownership interests in the Black Entities.  Therefore, Shor needed the cooperation of the trust (referred to as the Canales Group) if she was to obtain a dominant ownership position in the Black Entities and collect her judgment and the Trustee's claims against them and their assets.  Shor and the Canales Group entered into an agreement whereby the Canales Group agreed to refrain from interfering with Shor's collection efforts against Black and the Black Entities in exchange for a percentage of what Shor was able to collect from them.  D.E. 3-5, pp. 40-45. |
| July, 2011 | A motion to approve the Black Settlement was also filed. However, the Trustee advocated the Shor Sale as preferable.  *See generally*, D.E. 3-113, p. 10. |
| July 19, 2011 | The Bankruptcy Court conducted an evidentiary hearing on the motions to approve the Black Settlement and Shor Sale, respectively. |

| | |
|---|---|
| July 26, 2011 | The Bankruptcy Court heard closing arguments on the motions to approve the respective agreements. Disclosed during the evidentiary hearing and the closing arguments were two important issues: (1) Shor had obtained the cooperation of the Canales Group through an agreement; and (2) Shor still intended to seek turnover of the Black Entities in order to collect on her judgment against Black from their assets. |
| July 26, 2011 | The Bankruptcy Court approved the Shor Sale and rejected the Black Settlement, with Findings of Fact and Conclusions of Law. D.E. 3-71, 72. |
| Aug. 1, 2011 | The Bankruptcy Court denied a stay pending appeal. |
| Aug. 2, 2011 | Black appealed the Shor Sale approval order to this Court in Civil Action No. 11-cv-00258. |
| Aug.8-11, 2011 | Shor's counsel tendered to the county court a turnover order that provided that Shor would be the owner of Black's interests in the Black Entities. The county court judge signed the order (August Turnover Order). D.E. 3-77, Ex. C; D.E. 3-110, Ex. 37. |
| Sept. 1, 2011 | This Court denied Black a stay pending appeal in 11-cv-00258. |
| Sept. 14, 2011 | Trustee filed a motion with the Bankruptcy Court for authority, in the event that the county court ordered him to do so, to convey to Shor the interests he still held in the Black Entities as a result of the failed Black Settlement. D.E. 3-75. |
| Sept. 19, 2011 | The Bankruptcy Court conducted a hearing on the motion for authority to convey the interest in the Black Entities to Shor. Transcript, D.E. 3-118. |
| Sept. 22, 2011 | The Bankruptcy Court issued an order authorizing the Trustee to convey the interests he held in the Black Entities to Shor in the event that the county court were to order the Trustee to turn over that property. The county court so ordered and the Trustee made the conveyance to Shor. D.E. 3-110, Ex. 42. |
| Sept.-Oct., 2011 | Using the powers gained through the turnover orders, Shor took possession of the Black Entities and collected from their assets. |
| Oct. 12, 2011 | The county court judge signed a second turnover order. D.E. 3-110, Exhibit 43. |

| | | |
|---|---|---|
| | Nov. 4, 2011 | The county court judge signed a third turnover, this time acknowledging Shor's ownership in the Black Entities, but requiring Shor to turn over to the Sheriff possession of the interests she obtained in the Black Entities from the Trustee. D.E. 3-110, Exhibit 45. |
| | Aug. 6, 2012 | Black sued Shor and others for violations of civil rights in Civil Action No. 12-cv-00255 (S.D. Tex.), detailing the events of which he complains in his motion to set aside, which is the subject of this appeal.  D.E. 3-10. |
| or | Dec. 11, 2012<br><br>Jan. 3, 2013 | Black filed his Motion to Set Aside Shor Settlement Agreement (Motion to Set Aside), reciting recently discovered evidence and fraud.  D.E. 3-62, p. 5 n.4 (noting that the original filing was in the wrong venue). |
| | Mar. 1-4, 2013 | Motions to quash Black's subpoenas to obtain discovery on his motion to set aside were filed. |
| | May 13, 2013 | The Bankruptcy Court heard discovery issues on the Motion to Set Aside.  Transcript, D.E. 3-117. |
| | Oct.1, 2013 | The Bankruptcy Court issued a Memorandum Opinion and Order on Motion to Set Aside Shor Settlement Agreement, the order that is the subject of this appeal. |

## STANDARD OF REVIEW

Black's Motion to Set Aside (D.E. 3-5) recites that it is filed pursuant to Fed. R. Civ. P. 60, without specifying the sub-part of Rule 60 that Black intended to invoke. Both parties agree that the Bankruptcy Court's order denying the Rule 60 motion is reviewed for abuse of discretion.  D.E. 19, p. 8; D.E. 25, p. 5.  *See Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005) (Rule 60(b)); *Blumberg v. NSSI Liquidating Trust*, 2009 WL 2998516, *3 (N.D. Tex. 2009) (unpublished) (citing *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 871 (5th Cir. 1989) (Rule 60(d)(3)).  "A district court abuses its discretion if it bases its decision on an erroneous view of the law

or on a clearly erroneous assessment of the evidence." *Kennedy v. Texas Utilities*, 179 F.3d 258, 265 (5th Cir. 1999) (quoting *Esmark Apparel, Inc. v. James*, 10 F.3d 1156, 1163 (5th Cir. 1994)).

## ISSUES

In Black's Appellant's Brief, he states four (4) issues for appeal, all of which label the Bankruptcy Court's order as an abuse of discretion because of the Court's failure to permit discovery and an evidentiary hearing and:

1) Refusal to consider illegal and improper conduct in the undisclosed contemplation of Shor at or prior to the approval hearing;

2) Failure to recognize that Shor's promise of a percentage of collections was illusory because of the charging order statutes (Tex. Bus. Org. Code §§ 101.112 & 153.256);

3) Refusal to consider the special issues created by the Canales Agreement; and

4) Requirement that Black demonstrate a prima facie claim rather than just a colorable claim in order to qualify for discovery.

D.E. 19, p. 7. He briefs these issues as falling under Fed. R. Civ. P. 60(b)(6) and 60(d)(3). Shor responds that Black's motion was untimely and that he did not make the necessary threshold showing to be entitled to discovery or an evidentiary hearing. D.E. 25, p. 5.

## DISCUSSION

### A. The Bankruptcy Court Did Not Abuse Its Discretion in Determining that the Motion to Set Aside Was Not Timely.

While Black did not list the Bankruptcy Court's determination that his motion was untimely as an issue on appeal, it is a determination that he must overcome in order to qualify for relief.  He briefed some issues of timeliness as a subsidiary matter within his issue referring to the Bankruptcy Court's failure to provide relief for Shor's alleged illegal conduct.  D.E. 19, pp. 25-27.  Shor defended the Bankruptcy Court's ruling as a defensive issue.  Therefore, the Court considers it as part of a complete analysis of Black's issues.

At the earliest, Black filed his motion to set aside on December 11, 2012.  D.E. 3-62, p. 5 n.4 (noting that the original filing was in the wrong venue).  The Shor Sale approval order was signed July 26, 2011, and the resulting turnover actions of which Black complains took place between August 8 and November 4, 2011—all more than one year prior to the motion to set aside.  Black argues that his complaints fall within the "other reasons that justify relief" provision of Rule 60(b)(6), thereby escaping the one-year limitation of Rule 60(c) that applies only to complaints under Rule 60(b)(1)-(3).

The Bankruptcy Court held that, to the extent that they stated only ordinary fraud, Black's complaints were subsumed within Rule 60(b)(3) and were barred by the one-year limitation of Rule 60(c).  The Bankruptcy Court's analysis of Rule 60(b) and (c) is consistent with case law that has interpreted Rule 60(b)(6) as requiring that claims must state extraordinary circumstances in order to come outside the confines of Rule 60(b)(1)-(5).  *E.g., Hesling*, 396 F.3d at 643.  Therefore, to the extent that Black's arguments state

ordinary fraud, the Bankruptcy Court did not abuse its discretion in finding them to be brought pursuant to Rule 60(b)(3) and barred by the one-year limitation of Rule 60(c).

There are two alternative ways to categorize Black's claims: (1) as a separate category of claims under Rule 60(d)(3); or (2) as the type of "extraordinary circumstances" that come within Rule 60(b)(6). Under either analysis, it is clear from its own terms that the Rule 60(c) one-year time limit does not apply. Instead, a Rule 60(b)(6) motion must be brought within a "reasonable time." Fed. R. Civ. P. 60(c). And a Rule 60(d)(3) motion triggers the flexible principles of equity, allowing a court to determine whether to set aside a judgment under such circumstances without artificial time limits. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245-46 (1944) (rejecting a "term of court" time limit).

What is reasonable or equitable depends upon the circumstances—the nature of the offending conduct and its results. *Id.* In *Hazel-Atlas*, the challenged judgment was entered 12 years before the action to set it aside. However, the challengers filed that action within the same year that the fraud was discovered. Because the fraud was an elaborate deception by officers of the court that targeted the legal process to manipulate the grant of a patent that would achieve long-term results and because the request for relief was filed within a reasonable time after the discovery of the scheme, relief was warranted. *Id.*

Black's complaints are quite different. They arise from issues that were, at least in part, disclosed at the Shor Sale approval hearing prior to the order complained of. Shor disclosed that she had obtained an agreement with the Canales Group and that she

intended to seek turnover of Black's interests in the Black Entities.  Immediately after the Bankruptcy Court approved the Shor Sale and after the brief stay that the Bankruptcy Court permitted, Shor immediately acted upon the order, consistent with her representations.  The type of clandestine plot that infected the *Hazel-Atlas* judgment is not present here.  While Black emphasizes his contention that a county court judge was involved in the plot, anything involving erroneous county court orders were separate matters outside of the Bankruptcy Court's jurisdiction.

The manifestation of the alleged wrongdoing was immediate.  Yet Black waited more than a year after the Shor Sale approval order, more than a year after the initial turnover order, and more than a year after the disputed conduct came to rest with the final turnover order on November 4, 2011, before seeking the Bankruptcy Court's intervention—even though he sought relief through state appellate channels.  Black knew about his claims and chose when and how to seek redress.  The Bankruptcy Court did not abuse its discretion in finding that Black's motion to set aside was filed untimely under either principles of Rule 60(c) "reasonableness" or Rule 60(d)(3) powers of equity.

### B.  Illusory Promises and Conflicts of Interest in the Shor Sale Do Not State Grounds for Relief under Rule 60.

Black's second and third issues do not fall within the reasons that Rule 60 relief may be granted.  With respect to the second issue, if Shor's promise of a percentage of collections was illusory because her collection actions were limited to a charging order against Black's interests in limited liability companies and limited partnerships,[1] then that

---

[1]   The Court does not accept the premise that the prospects of collection were necessarily illusory if Shor was limited to a charging order.  If the Black Entities were operated and generated a profit (which was certainly

was a matter readily apparent at the time the motion to approve the Shor Sale was heard. D.E. 3-113, p 14, 16 (Shor was poised to obtain equity interests in Black Entities on June 8, 2011), 25 (intention to pursue equity interests of Black Entities immediately).  Nothing in this issue addresses (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence[2] that, with due diligence could not have been discovered within the time for Rule 59 relief; or (3) fraud or any of the other bases for relief stated in Rule 60.

The question of whether the Trustee would ever truly get anything from his contingent interest in Shor's collection efforts goes only to the issue of fair value or comparatively better value as contrasted with other offers with respect to the approval of the Shor Sale.  "An appeal from a denial of a Rule 60(b) motion brings up only the denial of the motion for review, not the merits of the underlying judgment."  *In re Burnley*, 988 F.2d 1, 3 (4th Cir. 1992); *Floyd v. Laws*, 929 F.2d 1390, 1400 (9th Cir. 1991).  Because this issue goes to the merits of the Bankruptcy Court's decision to approve the Shor Sale rather than to the decision to deny the motion to set aside, it does not fall within the parameters of Rule 60 and this appeal.  The Bankruptcy Court did not abuse its discretion in denying the motion to set aside on that basis.  Fed. R. Civ. P. 60.

With respect to the third issue, if having the cooperation of the Canales Group presented a conflict of interest sufficient to defeat the approvability of the Shor Sale, then that matter was also apparent at the time of the hearing.  D.E. 3-113, pp. 28-29.  The fact that Shor had secured the Canales Group's cooperation was disclosed.  *Id*.  If Black

---

possible), then one would expect that, at some time (even if well into the future), there would be distributions that Shor would be able to collect through a charging order.

[2]   Black expressed that his claims were brought under Rule 60(b)(6) and not under mistake, newly discovered evidence, or ordinary fraud.

needed more time to fully investigate and address that matter, he could have requested it at the time of the hearing.  But he did not.  He did not raise it within 28 days under Fed. R. Civ. P. 59 (as a matter justifying rehearing) or within a year under Fed. R. Civ. P. 60(b) (as a mistake, newly discovered evidence, or fraud).  Again, that issue goes to the merits of whether the Shor Sale should have been approved and is not before this Court on the appeal of a denial of a motion under Rule 60.  *Burnley, supra*; *Floyd, supra*.  The Bankruptcy Court did not abuse its discretion in denying the motion to set aside on that basis.

### C.  The Bankruptcy Court Did Not Abuse its Discretion in Denying Rule 60 Motion on the Issue of Fraud on the Court.

Black asserts that Shor's conduct in seeking the approval of the Shor Sale was "illegal and improper."  This, he argues, states a claim of fraud on the court.  Black invokes Rule 60(b)(6), which permits a motion to set aside for "any other reason that justifies relief."  While Rule 60(d)(3) specifically addresses the preservation of a court's ability to set aside an order for fraud on the court, it is treated as a Rule 60(b)(6) motion (if the facts demonstrate more than Rule 60(b)(3) fraud).  *E.g.*, *Latimer v. Smithkline & French Labs.*, 990 F.2d 626 (5th Cir. 1993); *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989).

Relief under Rule 60(b)(6) is restricted to "extraordinary circumstances." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863-64 (1987).  The initial order must be manifestly unjust.  *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993).

> To establish fraud on the court, it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its discretion.  Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court.  Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

*First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996) (citations omitted).  Importantly, this standard (a) requires that the alleged fraud undermines the Bankruptcy Court's challenged decision (not any other court's decision and not any other decision of the Bankruptcy Court) and (b) illustrates that nondisclosure of some relevant fact is not ordinarily sufficient.

Black does not articulate how the Shor Sale approval order (as opposed to any other order)[3] was the product of "extraordinary circumstances," was "manifestly unjust," or "the most egregious misconduct."  At their most serious level, the allegations assert improper influence on the county court judge with respect to county court collection proceedings that occurred after the Bankruptcy Court's approval order.  Such allegations, even if proven, do not implicate the challenged order.

The only complaint that addresses the Bankruptcy Court's proceeding is the alleged nondisclosure of the county court plot or its elements.  Such nondisclosure cannot be at issue because, as noted above, both the Canales Group agreement and Shor's

---

[3]   Black contends that, as part of this conspiracy, the Bankruptcy Court was duped into entering a second order. With respect to the ownership interests in the Black Entities held by the Trustee as a result of the Black Settlement, if the county court ordered the Trustee to turn them over to Shor, the Bankruptcy Court authorized him to comply. Significantly, Black's motion to set aside (D.E. 3-5) did not seek to set aside the order authorizing the Trustee to assign the interests to Shor.  Only the Shor Sale approval order has been challenged.

intention to obtain turnover of Black's interests in the Black Entities had been disclosed. And, even if true, such allegations are "less egregious misconduct" that does not rise to the level of "fraud on the court." *Lustig*.

Last is the nondisclosure of the alleged conspiracy with the county court judge. While any alleged conspiracy was manifested after the Bankruptcy Judge's decision, Black still contends that the specific erroneous collection tactics were the subject of an undisclosed conspiracy existing prior to the approval order and would have made a difference in the Bankruptcy Court's analysis of the merits of the Shor Sale.  The only evidence he offers of this alleged conspiracy is the supposition that there must have been an agreement among the parties, their counsel, and/or the county court judge prior to the Bankruptcy Court's order (July 26, 2011) because the tactical change in the turnover order happened so fast after the order was entered (August 8, 2011) that the conspiratorial agreement must have preceded the order.  D.E. 19, pp. 29-30.

In *Browning v. Navarro*, 826 F.2d 335, 345 (5th Cir. 1987), the successful fraud-on-the-court claim was supported by affidavits regarding the behind-closed-doors actions taken by attorneys to get the case consolidated with another case, set before a judge with whom the attorneys had a personal relationship—a judge they were currently representing—and over whom they bragged they had control, and events during the course of litigation, such as hearings without notice and the discharging of the opponent's attorneys, among other things, all of which prevented a fair trial.  Here, however, Black has not directed the Court to any affidavits of facts that support his arguments.  Instead, the Court has only speculative arguments that, because an erroneous county court order

was entered after the Bankruptcy Court's decision, the attorneys must have had a fraudulent state of mind prior to the order complained of, causing them to seek the relief for which their motion was pending.  This is not enough.

Black has not even pled that any specific person made any specific agreement to do any specific unlawful act at any specific time, all to the effect of undermining the Bankruptcy Court's deliberation.  Black contends that he needs discovery in order to prove his case and should have been permitted that discovery prior to denial of his motion to set aside.  He wants such information as the emails and phone records of Shor, the Trustee, their attorneys, and the county court judge.  Yet there is no indication that any of this discovery will reveal fraud on the court with respect to the Bankruptcy Court's decision.  To be entitled to discovery, Shor does not dispute Black's assertion that he must demonstrate a "colorable basis" for his claims rather than a "prima facie" case.  D.E. 19, pp. 52-53; D.E. 25, pp. 15-16.  Under the "colorable basis" standard, he needs "some evidence tending to show the essential elements" of his claim, a standard less than a "prima facie" case.  *See United States v. Armstrong*, 48 F.3d 1508, 1514 (9th Cir. 1995) *rev'd on other grounds*, 517 U.S. 456 (1996).

The "colorable basis" standard has been described as a demonstration that the claim is not insubstantial or frivolous and has "some possible validity."  *E.g., Campos v. Attorney General of the United States*, 503 Fed. App'x 138, 140 (3d Cir. 2012); *Woodruff v. Covington*, 389 F.3d 1117, 1125 (10th Cir. 2004).   While Black points to county court orders that he claims are patently erroneous, timed within two weeks after the Bankruptcy

Court's order, those things demonstrate only that Shor made good on her promise to the Bankruptcy Court that she would act swiftly and aggressively.

While Black contends that these circumstances indicate a nefarious plot that must have been devised prior to the Bankruptcy Court's ruling, there is no allegation or evidence of an individual intent or an agreement between any two parties to perform an illegal act or to subvert the judicial process in the Bankruptcy Court. The claim is speculative and does not survive the standard of having a "colorable basis." The Bankruptcy Court was within its discretion to deny the motion to set aside.

## CONCLUSION

For the reasons set out above, the Court OVERRULES Black's Issues and AFFIRMS the "Memorandum Opinion and Order on Motion to Set Aside Shor Settlement Agreement" (D.E. 3-62). The Bankruptcy Court did not abuse its discretion in holding: that the motion to set aside was not timely; that the alleged nondisclosures were actually disclosed and did not state a claim for fraud on the court; and that the claim that the parties conspired to obtain improper or unlawful orders from the county court were insufficient allegations and fell short of a "colorable claim."

ORDERED this 27th day of January, 2015.

Nelva Gonzales Ramos
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE